Commission. Thank you. Please proceed, counsel. Thank you, Your Honor. My name is Darrell Williams. I'm counsel for the appellate in this case. This case presents the question of where the watershed is between pleading requirements and ultimate issues of fact to be proven at trial. It's complicated, I believe, in this case by the fact that we are dealing with a rather unique area of the law, which is unique to Arizona, arising out of the Crackle v. Allstate case, which holds that an insurance carrier and the lawyers for the insurance company can be held guilty of, not guilty, liable for an abuse of process if they engage in tactics during the course of litigation which has a primary purpose other than defending a case. The Crackle case, I think it is fair to say, is uniformly disparaged in insurance journals and Judge Marghia's case, which we're on appeal here today, is uniformly given approbation in those same journals. Counsel, that case comes up in the context of what has to be proved, not really what has to be pled as I read it. That is correct. And you're referring to the Crackle case, Your Honor? Yes. That's absolutely correct. And so I think that Judge Marghia infused into her order some of the proof requirements which are enunciated in the Crackle case. Now, would you feel that you should amend your complaint to assert the additional things that need to be proved for Crackle? Well, I believe the complaint does articulate all of the elements set forth in Crackle. What the complaint does not do is go into the specific evidence which Crackle says must be proved. So kind of run through the complaint and see how each of the factors that Crackle says have to be proved has been adequately pled. If I look at paragraph 6 of the complaint, it says that both before and after the jury trial, National Union took willful actions in the use of judicial process for an ulterior purpose which was not proper in the regular conduct of those proceedings. And it is always difficult for me, Your Honor, to clearly define the difference between a conclusory statement and a factual allegation. But certainly, this puts National Union on notice that their actions in the underlying case were for an ulterior purpose which was improper in the conduct of the proceeding. Now, in two paragraphs later, I then list some specific aspects of the legal process which were abused. It also says that National Union was primarily motivated by its improper intent which resulted in its abusing process. And by that, what is intended to be conveyed is that National Union, which is faced with a multimillion-dollar obligation, has incentive to do something to not pay that claim, which is the cost of defense, which will be millions of dollars. And in this particular case, as we allege here, what they did was is they attempted to prove that Mr. Grabinski was indeed guilty when that was not an issue in the insurance coverage case. And so when the insurance company expends so much efforts to prove that its named insured is guilty, which has nothing to do with coverage, because guilty only affects coverage after the tribunal has, in fact, found that. And so the idea is to wear out the defendants who do not have money, continue with the litigation, deprive them of the funds during the course of the litigation which they need to defend themselves in the collateral criminal case, and thereby assure, if you will, that there will be a guilty order. But, counsel, isn't that permissible litigation strategy? Not if it is the primary purpose. It is not. If the question of chicken and egg, cart and horse, what is the primary purpose of this particular strategy? If your strategy is based upon, well, I'm just going to string this out, even though I know this coverage exclusion is not operative and I'm going to string it out until the coverage exclusion takes effect because there's going to be a guilty verdict, or we hope that there will be one, then you cannot string it out for that purpose and thereby, as I allege in the complaint, flout the court's orders to pay for the defense as you're ongoing because that virtually is... Well, when you say flout the court's order to pay for the defense, didn't the insurance company pay for the defense? I mean, up to the policy limit? Ultimately, they paid more than that. But during the course of the criminal case... Well, what do you mean then by flouting the court's order to pay for the defense? Before the policy limit was reached, there was an extant order which required National Union to fund defense fees and they did not do it. And so there was a hiatus of, I don't remember how many months that was, but a considerable number of months where they simply would not fund the defense at a crucial time prior to trial. And the reason for, at least the stated reason for their action was what? Well, they did not have a stated reason. There was an extant court order saying fund the defense and they did not. But they filed the bond, right? And appealed. If I may, Your Honor, what I'm talking about is before there was an appeal, before there was a resolution of the actual obligation to pay by the jury trial against National Union on the coverage issues, there was an extant order saying you must pay this and they did not. But didn't the superior court say that the judgment was one for money damages and not a declaratory judgment, so what order was there to flout? Before that particular final judgment, there was an interim order by the court obligating them to pay fees for defense. What, where is that in the record? Well, that's not in the record. All it is is in the complaint which says they flouted court orders because the issue under Crackle is some specific process that was abused. But where is the order in the record that was flouted? Your Honor. Look beyond the complaint on 12B6. Well, that order was made in which case? In a state court action, Your Honor. Oh. Yeah. And so it's not here. And so what I'm looking at is the complaint and the issue is are there sufficient acts alleged? The allegation is there was a specific order which was flouted. But how does the case of Alito v. Glock affect your argument? Because that case says that if the allegations are conclusory, that's insufficient to survive a motion to dismiss. Well, as I mentioned to Judge Fletcher just a second ago, I have difficulty with the watershed between conclusory allegations and factual. When I say there's a specific order that was flouted, I don't believe that's a conclusory allegation. But I must admit, after 31 years of practicing law, I see that there's a lot of gray in the law. And I don't believe that's conclusory. If it is conclusory, then I should be allowed to amend. Did you ask for leave to amend? We did, Your Honor. And that was denied. So was that order attached to the complaint? I beg your pardon? The order that you said was flouted, was it attached to the complaint? No, it was not. I see I'm down to one minute. Do you want to reserve that for rebuttal? I think I would like to reserve that. All right.  Good morning. May it please the Court. Joel Hoxie on behalf of the Appalese National Union Fire Insurance Company and Steven Kent to zero in on the panel's question about this flouting court orders. It is in the record at tab four of the excerpts of record of which Judge Murgia took judicial notice. There is a minute entry dated November 14, 2003. And the trial judge in the state court case makes it very clear that the National Union's obligation to advance defense costs terminated upon exhaustion of the policy limits. This was one of the largest securities frauds in the State of Arizona. The National Union had issued a $5 million DNO policy. Well, that's what I was trying to get at. Now, my understanding from this record is that the National Union did pay the policy limits. It did pay the policy limits. So now how does that fit in in terms of timing with this order that Mr. Williams was talking about? This all took place in the state court trial below. He is attacking in his complaint. At paragraph 8A, that the defendants in that trial flouted court orders. And then we introduced and asked Judge Murgia to take judicial notice of this particular order that the trial judge in that case, Ana Baca, had issued in November of 2003. And she made it very clear that once the policy limits were exhausted, there was no more requirement on the part of National Union to advance criminal defense costs. Well, now, counsel, this is 12B-6. We just look at the complaint. It seems to me she should have turned this into a summary judgment. No, because the allegations first in paragraph 6 were simply a what the Supreme Court in the Bell Atlantic case would refer to as a formulaic recitation of the elements. They literally took the verbiage out of crackle and repeated it. But what more is required under Federal pleading standards? That there be enough facts pled so that the ---- I don't think generally, now, that may be true under Arizona State law, but in Federal court, it would be governed by Federal law, right, the pleading standard. Yes. So there would be facts, enough facts pled so as to meet the plausibility standard. And for the elements of abusive process where you have the facts showing that there ---- that the use of the litigation procedure under attack was primarily for an improper purpose and that the procedure used can't pass the logical explanation test. In other words, there's no logical explanation for the use of that procedure other than for a primarily motivated improper purpose. And ---- And are you saying that under Federal law, I mean, evidentiary facts have to be pleaded to establish that proposition? You have to ---- you can't just rely on conclusory allegations. You have to plead some facts. You don't have to plead all of your evidence, but you have to plead some facts. What's your best case to support that proposition? Bell Atlantic v. Twombly. But that's an antitrust case, and it was very specific that, you know, that's they're setting forth, you know, specific pleading standards for antitrust cases. It didn't generally abrogate, you know, the Federal pleading rules. Courts since Twombly and over 1,300 cases have applied it in cases well beyond the antitrust area. I don't think in our circuit we've ever applied that case to, you know, defeat a complaint, you know, outside of the antitrust area. Can you cite a Ninth Circuit case to that effect? I don't believe the Ninth Circuit has yet issued an opinion on that. But there are ---- Counsel, what usually happens if the district court thinks that it's not adequately pled, they just dismiss with a leave to amend. Here they dismissed with prejudice. Yes. Because when you look at the six specific alleged abusive procedures under paragraph 8, even if you assume those to be true, they fail to state a claim under Arizona law for abusive process. So there was nothing by way of an amendment that would cure that legal defect. And there is case law that the trial judge relied on that says that it's not an abusive discretion to deny leave to amend when it would be futile to do so. And that was her ruling. Usually, at this stage, they certainly have an opportunity to allege if there's any possible set of facts that could be an adequate claim, you're allowed to try to plead it. And she cited that standard in her order and found that there was no possible set of facts that would, under this case, that would pass muster under the Arizona law as to abusive process. Could she decide that without going outside the record? Well, she only went outside the complaint. She only went outside the complaint, and properly so here, when she considered information in the lower court, the State court, underlying bad faith trial by way of judicial notice. And that's clearly proper procedure leave. What about this order which ordered you to pay some funds right then? Yes. And it was complied with until the policy limits were satisfied. And what were the policy limits? Five million. But there had been a massive civil fraud case brought against Mr. Grabinski's employer, and some of the funds were used to settle that judgment. But the ruling of the trial court was that once the policy limits were exhausted, there was no further duty to advance criminal defense costs. Now, in the underlying State court action, the plaintiff, Grabinski, chose not to seek any sort of mandatory injunctive relief. He simply sought an amount of money that would be necessary to fund his criminal defense costs. He could have asked for injunctive relief, which would have been in the form of some sort of a court order requiring that criminal defense costs be advanced. For whatever reason, he chose not to do so. So he ended up, and he won, but he ended up with a sizable money judgment, but it was a judgment for money only. And then National Union exercised its right to post a supersedious bond, which was in an amount set by the trial judge. Mr. Grabinski was unhappy with that, so he took that up on appeal to the Arizona Court of Appeals. They said, no, as a matter of right, you have a right to post supersedious. He then petitioned the Arizona Supreme Court for review, citing Wisconsin law, where in Wisconsin, under a different statute, insurance companies may be required to advance funds during the pendency of an appeal, but that's not the law in Arizona. And the Arizona Supreme Court declined jurisdiction on his special petition. So the ---- So was there an argument on the motion to dismiss? Yes. And was there any representation made regarding leave to amend or request for leave to amend or any indication of what facts could be pled if the case were dismissed? There was no discussion of what facts could be pled. There was some, and the transcript of the hearing is in the excerpts of record that we provided, our supplemental excerpts of record. But the theme that was evolving at the time of oral argument was that National Union was stringing out this case during the appellate process. But by the time we had oral argument, the underlying appeal had run its course, the Court of Appeals had affirmed the underlying State court judgment, and National Union, without moving for reconsideration, petitioning the Supreme Court for review, promptly paid not only that underlying judgment, but entered into a settlement and paid the appellate fees, which under Arizona law the prevailing party would be entitled to receive, paid those fees. So Judge Murgia was cognizant of that. Now, one of the big arguments ---- Mr. Hawkins, listen. This is my primary problem with Judge Murgia's order. I mean, the heart of the order on the first claim is the paragraph that starts at the bottom of page 9, carries over to the top of page 10, and it concludes this way, mere speculation concerning a defendant's ulterior motive cannot sustain an abusive process claim. And then she cites Crackle, but 888 to 889. Right. P3rd and then, as observed in Crackle, a plaintiff must show that an alleged improper purpose was a primary motivation. And then she cites Crackle again. But the problem is what she's citing there is, you know, the standard of proof required, right, to avoid a directed verdict. And we're not at that stage. We're talking about pleading in this case. And these citations from Crackle have to do, you know, with the minimum amount of proof necessary to prove that claim. And she's using that standard to quash the complaint, which seems to me to be erroneous. Well, she ---- what she was doing was she was zeroing in on the subparts of paragraph 8 and said, I'm not requiring that you at this point provide all of your evidence to support those. I'm saying, on their face, none of those litigation procedures, if you will, rise to the level necessary to satisfy the abuse of prejudice. That's not what the order says. I mean, the order says, you know, it's a failure of proof. Mere speculation, you know, won't sustain the claim. You have to show. Show means to prove, right? And, you know, I think she's applying the wrong standard here. In other words, you know, as Judge Fletcher says, I can see where you would require this if we had reached a summary judgment stage and, you know, the plaintiff had adduced the proof, you know, they had amassed to support these allegations, but we haven't reached that stage yet. Well, for example, she had an abundance of information in front of her by way of the judicial notice, so that, for example, paragraph 8A, flouting of court orders, is simply not true, and she could take judicial notice of that. She didn't say that in the order. That's the problem. That's not the basis of her order. Well, counsel, if you read the entire order, is it fair to say that she's setting out the elements and then discussing the allegations and how they fit into those elements? She is setting out the elements, but then she is focusing on the fact that you can't, in conclusory fashion, simply state the elements and survive motion to dismiss and move on. And given the judicial notice that she had from the trial court below and the very acts that they were complaining of, moving for a new trial, filing a notice of appeal, posting a court-ordered supersedious bond, those are not the kind of litigation tactics that give rise to abusive process. Well, but the same thing could be said about the tactics used in Crackle, right? Crackle is a far different situation, because in Crackle ---- It's a different situation, but if you take apart, you know, each tactic that was used there, you could say they could all be used for, you know, for legitimate purpose, just as you're saying they were used here. But here, in that sense, it's no different. But here, the purported improper purpose was trying to obtain a settlement and delaying payment of a judgment. But under Arizona law, under the Byrd v. Rothman case, trying to get a settlement is not an improper purpose. It's a proper purpose. And here, by the time we had the oral argument, she knew there was no settlement. The case never settled, and the entire judgment was paid. All right. Counsel, you've exceeded your time. Rebuttal. I don't have much to rebut this. I think this is a case that does involve under Arkansas law. What about Mr. Hoxie's reliance on the Bell Atlantic case, although it hasn't been cited in this circuit, you know, outside of antitrust law? He says there were, what did he say, 12 or 13,000 cases where it's been cited in a number of other areas? And I think if we follow that as the law, then, you know, it gives this order a lot higher standing, doesn't it? It does. I have read the Twombly case several times because It's pretty strong stuff, isn't it? Well, it's amazing to me that it seems to take away what has been notice pleading since the 1930s. Right. And it's difficult for me to do anything other than attempt to limit that to something that involves something that is far more complex. Well, let me ask this question to you. Suppose Bell Atlantic were the law. If you were given an opportunity to amend your complaint, could you, you know, amend your complaint to comply with the standards of Bell Atlantic in this case? I believe I can. In other words, you can show, you know, you have evidence to support these, you know, improper motives and ulterior purposes? Yes. Although I will say this. Motives and purposes are typically drawn based upon other inferences from other facts. And so it's very hard in a complaint to say, here is the evidence that shows improper motive. Without discovery, for example, to find the internal memoranda, which like crackles say what you do with a missed case. That you just take no prisoners and you defend it even if it costs an extraordinary amount. And so I believe Bell Atlantic Twombly is a problematic case. It may be problematic, but it's, you know, Supreme Court law. Hey, you know, the Supreme Court did it and we're all bound by that. But I at least need the chance to fulfill those requirements. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: B. Fletcher, Tashima, Rawlinson